In the Matter of the Compensation of
Burl R. Hayes, Claimant.

**SEDGWICK CLAIMS MANAGEMENT SERVICES,**
and GTS of Oregon, LLC,
*Petitioners,*

*v.*

Burl R. HAYES,
SAIF Corporation,
and the Workers' Compensation Division,
a Division of the
Department of Consumer and Business Services,
*Respondents.*

02-01614, 03-04481; A128288

143 P3d 567

Michael G. Bostwick argued the cause and filed the brief for petitioner Sedgwick Claims Management Services.

Brian L. Pocock argued the cause and filed the brief for petitioner GTS of Oregon, LLC.

Evohl F. Malagon filed the briefs for respondent Burl R. Hayes.

Jerome P. Larkin argued the cause and filed the brief for respondent SAIF Corporation.

Richard Wasserman, Attorney-In-Charge, Civil/Administrative Appeals Unit, waived appearance for respondent Workers' Compensation Division.

Before Armstrong, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

ARMSTRONG, P. J.

### ARMSTRONG, P. J.

■        Petitioners Sedgwick Claims Management Services and GTS of Oregon, LLC, seek judicial review of an order of the Workers' Compensation Board that held that SAIF Corporation did not provide insurance coverage to GTS at the time that GTS's employee, Burl Hayes, was injured on the job, and that GTS is therefore a noncomplying employer. We review the board's order for substantial evidence and errors of law, ORS 183.482(8)(a), (c), and affirm.

In its order on reconsideration, the board concluded that SAIF had properly terminated GTS's workers' compensation insurance policy effective September 30, 2001, for non-payment of premiums. We conclude without discussion that the board did not commit any legal error in reaching that conclusion and that the board's pertinent findings are supported by substantial evidence.

■        It is undisputed that on November 8, 2001, an employee of GTS contacted SAIF regarding insurance coverage. SAIF advised the employee that, if premiums were paid by November 28, 2001, GTS "would be all right." The employee understood that to mean that GTS had not lost coverage and would be insured continuously if the premiums were paid. The employee mailed a check for the full amount on November 10, 2001. Claimant was injured on November 13, 2001. SAIF received the check on November 14, 2001, and acknowledged receipt with a November 20, 2001, letter to GTS, stating that coverage was "reinstated effective November 14, 2001." The letter also advised that "[o]ur records show [that] you had no coverage from 12:01 a.m., October 1, 2001, through midnight, November 13, 2001. Payroll should not be reported for that period. * * * A policy declaration for the current policy period, November 14, 2001 through September 30, 2002, will be issued within the next week." SAIF thus denied coverage of the claim for the November 13, 2001, injury.

GTS argues that by "reinstating" its workers' compensation insurance coverage, SAIF provided coverage retroactively for the period subsequent to the September 30, 2001, termination. That is incorrect for several reasons. By the time that GTS paid its premium on November 14, 2001,

GTS's previous policy had lapsed, effective September 30, 2001. Thus, GTS was already without coverage. The policy that SAIF issued after receipt of GTS's premium payment covered the period of November 14, 2001, through October 1, 2002. There is no indication in the policy itself that it was effective retroactively to cover the lapsed period.

We reject GTS's contention that, because SAIF stated in its November 20 letter that it would "reinstate" the policy, that meant that SAIF intended to reinstate GTS's former lapsed policy without a gap in coverage. The letter itself noted the gap in coverage. We also reject GTS's contention that, because SAIF used the word "reinstate" in the letter, it necessarily agreed to provide retroactive coverage. That is inconsistent with the express terms of the acknowledgment letter as well as the policy.

GTS asserts that the word "reinstate" has a special meaning in the Workers' Compensation Law that encompasses retroactivity. GTS relies on two former administrative rules. Under *former* OAR 436-050-0005(20) (July 1, 2001), applicable here, "reinstatement" was defined as

"the continuation of workers' compensation insurance coverage without a gap under a guaranty contract."

Further, *former* OAR 436-050-0100 (July 1, 2001) provides for the reinstatement of coverage:

"(2) A guaranty contract terminated pursuant to ORS 656.427 may be reinstated provided the insurer submits notice to the director stating that the termination notice is being rescinded with no lapse in coverage. Notice under this section shall be in writing and include the name of the insurer, legal name of the insured, insured's address, insured's telephone number, insurance policy number, and the insured employer's Federal Employer Identification Number (FEIN)."

Thus, GTS asserts, when a policy is reinstated, there is no lapse in coverage. Therefore, GTS argues, because SAIF used the term "reinstate" in its November 20, 2001, letter, it necessarily must have reinstated the former policy without a lapse in coverage. We agree with SAIF that its use of the term "reinstate" did not commit SAIF to a reinstatement of GTS's

policy without a lapse in coverage when that is not, in fact, what SAIF did when it issued a policy that provided coverage effective November 14, 2001. Further, SAIF did not provide the notice required by *former* OAR 436-050-0100 that would have been necessary to effectuate a reinstatement. In short, SAIF did not in fact "reinstate" the policy, even though it used that term.

We thus agree with the board that SAIF did not provide workers' compensation insurance coverage to GTS during the period from 12:01 a.m., October 1, 2001, through midnight, November 13, 2001, and GTS was therefore a noncomplying employer.

Affirmed.